OPINION
Appellants Oregon City Schools ("Oregon") and Marilyn Beckman ("Beckman") set forth the following assignments of error:
"APPELLANTS' ASSIGNMENT OF ERROR NO. 1
 "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT BY FAILING TO APPLY O.R.C. § 2744, OHIO'S POLITICAL SUBDIVISION IMMUNITY STATUTE, TO APPELLEES' CLAIM THAT APPELLANTS VIOLATED A STATUTORY DUTY TO REPORT CHILD ABUSE.
"APPELLANTS' ASSIGNMENT OF ERROR NO. 2
 "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT ON APPELLEES' CLAIM THAT APPELLANTS VIOLATED A STATUTORY DUTY TO REPORT CHILD ABUSE."
The facts that are relevant to the issues raised on appeal are as follows. In September 1995, the Oregon City Schools entered into a contract with the Lucas County Educational Service Center whereby Lucas County would provide special education services to Oregon's multi-handicapped students. Appellant Oregon, as "cooperative host," provided classroom space at Starr Elementary School. Appellant Marilyn Beckman was principal of Starr. Lucas County provided all personnel, including teachers, aides and program supervisors.
Lucas County hired Kimberly Tyrrell to teach the multi-handicapped class in which Tommy Blachowski, son of appellee Terrie Blachowski, and Whitney Sprouse, adopted daughter of appellee Joan Sprouse, were students. Tommy Blachowski, eight years old in 1995, has been diagnosed as autistic and mentally retarded. Whitney Sprouse, also eight years old at the time she was placed in Tyrrell's class, was blind and partially paralyzed on the right side of her body as a result of trauma she experienced as a baby in her first adoptive home. On May 1, 1996, appellees Joan Sprouse and Thomas Sprouse filed a complaint in the Lucas County Court of Common Pleas in which they alleged, interalia, that the Oregon City Schools were negligent in the employment, hiring and supervision of Tyrrell; that Tyrrell intentionally abused Whitney while she was her teacher, that appellants knew or should have known about such abuse, and that appellants breached their duty to report such abuse pursuant to R.C. 2151.421. Specifically, appellees alleged that Tyrrell intentionally and/or negligently abused Whitney while acting in her capacity as a teacher by allowing the child to walk into a door. Also on May 1, 1996, appellees Terrie and James Blachowski filed a separate complaint alleging acts of negligence and abuse by the Oregon City Schools and Beckman. As to Tommy, appellees alleged that Kimberly Tyrrell used improper disciplinary techniques to control behavior outbursts. They alleged that in order to control Tommy, who has a fear of germs, Tyrrell would lick her fingers and wipe them on Tommy's face. On May 30, 1996, the two lawsuits were consolidated by the trial court. Both Oregon and Beckman denied liability because they had no employment relationship with the Lucas County personnel and on the basis of R.C. 2744, which grants immunity to political subdivisions and their employees from liability for injury, death or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of that political subdivision.
On April 10, 1997, appellants filed a motion for summary judgment as to all claims against them by all plaintiffs. Appellants asserted that they were not liable for any of appellees' claims because: a) Oregon Schools did not employ any of the persons providing services to the children in the multi-handicapped classroom; b) Marilyn Beckman and the Oregon City School District had no duty to supervise the Lucas County teachers and neither Beckman nor any other employee of the Oregon City Schools witnessed any acts that indicated a threat of harm to Whitney or Tommy, and c) pursuant to R.C. 2744.02 and 2744.03, Oregon City Schools are immune from liability because Starr Elementary School was performing a governmental function by serving as a host school to the Lucas County special education program. On December 5, 1997, appellees filed a motion in opposition and on January 8, 1998, appellants filed a rebuttal memorandum.
In considering appellants' motion for summary judgment, the trial court had before it a total of twelve depositions, including those of Terrie Blachowski, Tommy's mother; Joan Sprouse, Whitney's mother; Catherine Downes, bus driver; Sandy Kidd, bus aide; Kathleen Beckman, Tyrrell's full-time classroom aide; Sandra Siefke, part-time aide in Tyrrell's classroom and Kimberly Tyrrell, Whitney's and Tommy's teacher.
Terrie Blachowski testified that, at Tommy's present age of ten, he functions at a three-year-old level as far as daily living, communication, and social skills, while his academic skills are at the kindergarten level in some areas. Blachowski denied ever being told by Tyrrell that the teacher had noticed that if she licked her finger and held it in the air Tommy would respond by stopping any inappropriate behavior, and denied having told Tyrrell to go ahead and do it if it works. Blachowski also testified that Tommy suffered emotional harm as a result of Tyrrell's treatment. Joan Sprouse, Whitney's mother, testified that Whitney ran into a door and cut her lip while walking along the hallway with Tyrrell in January 1996.
Catherine Downes, the children's bus driver, testified that she is employed by the Oregon Board of Education. She stated that on one occasion she saw Tyrrell rub snow in Tommy's face after Tommy hit another child with a snowball. She stated that the snow went down Tommy's neck and back and that he was upset. Downes also testified that she heard Tyrrell tell Sandy Kidd, the bus aide, to touch her finger to her tongue and hold it in the air to control Tommy if he was acting up. Downes further stated that it was her opinion that Tyrrell's methods of disciplining the children were "a little rough at times." Sandy Kidd testified that Tyrrell had told her she could control Tommy's behavior by licking her finger and holding it in the air. Kidd stated that Tyrrell told her Tommy's mother said it was all right to do that but not to tell everyone else to do it.
Sandra Siefke, a teacher's aide employed by Oregon City Schools who spent part of each week in Tyrrell's classroom, testified that more than once she saw Tyrrell lick her finger and touch Tommy when he was out of control. She stated that when Tyrrell did that it made Tommy even more agitated. Siefke testified that she observed other children use the same technique with Tommy and that Tyrrell never stopped them. She further testified that on one occasion she saw Tyrrell hold Tommy down and let the other children lick or kiss him. She also stated that on one occasion she saw Tyrrell stick Tommy's hands in some paint and then make him wipe them in his hair after he put paint in another child's hair. Siefke stated that Tyrrell had a policy of letting a child who had been hit, strike the other child back. She testified that after Tommy damaged another child's art project she observed Tyrrell hold the clay pot Tommy had painted in the air and drop it onto the floor where it shattered. Siefke stated that she heard Tyrrell tell the children as they prepared for a field trip that if they were not good she would make them drink toilet water. She further testified that she had heard Tyrrell mention to someone else that they should walk Whitney until the child was too tired to do anything else.
Kathleen Beckman, Tyrrell's full-time aide, testified as to January 17, 1996, when Tyrrell took Whitney for a walk. She said that Tyrrell and Whitney were gone about ten minutes and when they returned she noticed Whitney's lip bleeding. When Beckman asked Tyrrell what happened, Tyrrell said, "Accidents happen." Beckman cleaned Whitney's lip with a wet towel. Beckman stated that the following day Tyrrell filled out an incident form and told Beckman to sign it as a witness to the incident. Beckman signed the form without reading it but later that day had regrets when she realized that there were statements on the form that were inaccurate. Beckman stated that Tyrrell wrote on the report that the accident happened at 11:45 a.m. as they were walking to lunch, when it actually occurred at approximately 2:00, long after lunch. Beckman stated that the following day she discussed her concerns about the inaccuracies in the accident report with Marilyn Beckman. At that time she also discussed with Marilyn Beckman her concerns about Tyrrell using the "saliva method" of discipline, holding Tommy down, and having the children hit themselves if they hit someone else. Beckman testified that these matters were discussed a few days after Whitney's accident at a meeting which was attended by her; Marilyn Beckman; Tyrrell; Mike Smurr, supervisor of student services for the Lucas County Educational Services Center; and Vikki Snyder, special education supervisor for Oregon City Schools.
Beckman stated that Tyrrell and she were aware of Tommy's fear of germs. She said that she saw Tyrrell try to control Tommy by licking her finger and holding it up toward him a couple of times and that Tyrrell threatened to do it. Beckman said she never tried to control Tommy that way because she thought it was cruel since he is so afraid of germs. Beckman further testified that she observed Tyrrell hold Tommy down, letting the other children kiss and lick him, two or three times. She said that Tommy was upset by this and would struggle to get up and that, once he did get up, he would come to her and ask her if she could see any germs on him. Beckman recalled hearing Tyrrell tell the bus driver and physical education teacher that they could control Tommy by licking their finger and holding it up. Beckman stated that in the beginning of the school year Tyrrell let the children hit and kick each other in retaliation and that she told Marilyn Beckman about that. She said on a few occasions she saw Tyrrell make a child hit himself or herself after hitting another child. She witnessed this twice with Tommy. Beckman also witnessed Tyrrell make Tommy wipe paint-covered hands in his hair after he got paint in another student's hair. On a couple of occasions, Beckman saw Tyrrell destroy Tommy's art projects after Tommy had damaged someone else's. Beckman heard Tyrrell on two occasions tell the children they would have to drink toilet water if they misbehaved on a field trip.
Kimberly Tyrrell testified that, within limits, she believed in a method of discipline where the children would experience what they had done to someone else to see what it felt like. Tyrrell admitted being aware of Tommy's fear of germs but denied ever holding him down and telling the children to lick their hands and touch him. Tyrrell admitted telling the bus driver about the finger technique with Tommy and may have told the physical education teacher. She denied telling Siefke to do it. Tyrrell said that, with knowledge of Tommy's fear of germs, she may have on occasion put her finger on Tommy's face but that only once did she do it after licking her finger first. Tyrrell said that on two occasions she broke Tommy's art projects after he damaged someone else's.
On February 18, 1998, the trial court filed its judgment entry in which it granted summary judgment on all causes of action except the claim that appellants had violated their statutory duty to report child abuse pursuant to R.C. 2151.421.
In its judgment entry, the trial court found that there was no evidence in the record either that Kimberly Tyrrell had an employment relationship with Oregon City Schools and Marilyn Beckman or that Beckman had supervisory authority over Tyrrell. The trial court further found that, while appellants did not have a duty to supervise Tyrrell as a Lucas County employee, they did have a duty to supervise the multi-handicapped classroom to ensure the safety of the students. As to appellees' claim that appellants violated a duty to report any knowledge or suspicion of child abuse to the appropriate authorities pursuant to R.C.2151.421, the trial court found that a genuine issue remains as to whether Kimberly Tyrrell's conduct constituted abuse as defined in R.C. 2151.031 and whether appellants' duty to report was thereby triggered.
Appellants' two assignments of error will be considered together since both address the issue of the trial court's denial of summary judgment on the question of the duty to report suspected child abuse. Appellants assert that the trial court should have applied immunity pursuant to R.C. 2744 to appellees' claim that appellants violated a duty to report child abuse. Appellants argue only the immunity issue, asserting various reasons why they should be immune from liability in this case. They do not specifically address the trial court's finding that a genuine issue of fact exists as to whether appellants violated a duty to report suspected child abuse.
In reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
R.C. Chapter 2744 provides a three-tiered analysis for determining the availability of sovereign immunity to political subdivisions. R.C. 2744.02(A)(1) provides that a political subdivision is generally not liable for injury, death or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of that political subdivision. This provision is generally referred to as the "blanket immunity" provision.
R.C. 2744.02(B) then lists five exceptions to the blanket immunity provision. R.C. 2744.02(B)(5), the subsection cited by appellees and the only exception to immunity that arguably could apply in this case, states that:
 "* * * a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code ***. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision * * *." [Emphasis added.]
Relevant in this case to the question of liability imposed by another section of the Revised Code is R.C. 2151.421, which provides as follows:
 "(A)(1)(a) No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the public children services agency * * *." [Emphasis added.]
R.C. 2151.421(A)(1)(b) states that division (A)(1)(a) above applies to any person who is a school teacher, school employee or school authority.
R.C. 2151.031 defines abused child as any child who:
"(A) Is the victim of "sexual activity" * * *;
"(B) Is endangered * * *;
 "(C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means * * *. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a * * * person having custody or control * * *."
This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof and the law, finds that: 1) it is clear from the testimony presented through the depositions summarized above that there exists a genuine issue of material fact as to whether Kimberly Tyrrell's conduct with regard to Tommy Blachowski and Whitney Sprouse rose to the level of "abuse" as defined by R.C. 2151.031 and whether Tyrrell's conduct therefore triggered appellants' duty to report suspected child abuse pursuant to R.C. 2151.421 and 2) when construing the evidence that was before the trial court most strongly in favor of appellees, reasonable minds can only conclude that appellants are not entitled to summary judgment as a matter of law. Accordingly, appellants' first and second assignments of error are not well-taken.
On consideration whereof, this court finds that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
 Melvin L. Resnick, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.